# EXHIBIT A

EXCESS CASUALTY VARIABLE QUOTA SHARE REINSURANCE AGREEMENT

between

AMERICAN HOME ASSURANCE COMPANY
New York, New York

or

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.
New York, New York

(hereinafter referred to separately, not jointly, as the "Reassured")

and

The Companies subscribing to the respective Interests
and Liabilities Contracts to which this Agreement is
attached

(hereinafter referred to as the "Reinsurer")

Effective:    12:01 A.M., December 1, 1980

Intere Intermediaries, Inc.

NY02000515
6/21/81

## BUSINESS COVERED:

1. The Reassured may cede and the Reinsurer shall be obligated to accept a proportional share of the liability of the Reassured as hereinafter specified under all policies, binders, contracts of insurance or reinsurance or other evidences of liability, whether oral or written (hereinafter called "policies") issued or contracted for by the Reassured and classified as Commercial Liability and Worker's Compensation Excess Policies underwritten by the following Divisions of the Reassured; Division 2, Division 3, Division 5, Division 5A, and Division 5B, covering Insureds whose operations are principally located in the United States of America and Canada. The definition of the business of the aforesaid Divisions, and changes in the Divisions eligible for cessions hereunder shall be as agreed with the leading Underwriter.

## CESSION LIMITS:

2. Cessions hereunder in respect of any one policy shall be subject to the limits set forth hereunder. All policies or layers with concurrent terms covering the same subject matter issued to one Insured shall be considered "one policy". One Insured means any one interest together with its affiliates and subsidiaries insured under the same policy.

A. Excess Compensation – per occurrence, excess of minimum Underlying Insurance, or SIR plus $1,000,000:– Up to 50% of total insurance written by Reassured, up to 50% of $4,000,000 excess $1,000,000 excess Underlying.

B. General Liability Buffer Covers – excess of minimum Underlying Insurance or SIR of $250,000 per Occurrence/ $500,000 Aggregate.

| If Underlying Is: | Limit of Cession Is: |
|---|---|
| $  250,000 – $    500,000 | 40% up to 40% of $  500,000 |
| $  501,000 – $ 1,000,000 | 40% up to 40% of $1,000,000 |
| $1,001,000 – $ 5,000,000 | 40% up to 40% of $5,000,000 |

No "Buffer" shall be ceded which attaches excess of more than $5,000,000.

C. Excess and Umbrella Covers:

| If Policy Limit Is: | Limit of Cession Is: |
|---|---|
| $1,000,000 to $ 5,000,000 | 40% up to 40% of $ 5,000,000 |
| $5,001,000 to $10,000,000 | 30% up to 30% of $10,000,000 |
| Greater than $10,000,000 | 20% up to $5,000,000 |

Intere Intermediaries, Inc.

NYO2000515
6/21/81

If a cession on the same Insured is made on both a Buffer and an Excess or Umbrella policy, the combined cession on that Insured shall not exceed $5,000,000 per occurrence. Also, each cession hereto shall not exceed $1,000,000 per occurrence or aggregate as respects Railroad and Hospital Risks.

If the Reassured, without the knowledge and contrary to the instructions of its head office inadvertently cedes a risk to this Treaty on a basis that violates the foregoing cession schedule, other than as to the maximum cession limitation of $5,000,000, such risk shall be covered hereunder until a member of the executive or managerial staff at the Reassured's head office, having underwriting authority in the class of business involved, receives knowledge thereof and pending cancellation or receding of such risk to bring it in line with the foregoing cession schedule, for a further period of 30 days after receipt of such knowledge by such member.

REASSURED RETENTION:

3.

    a)    When the cession hereunder does not exceed $1,000,000 per occurrence/$1,000,000 Aggregate on a policy, the Reassured shall retain for absolute net account, subject only to Inter-Company Pooling a retention of policy liability equal to the cession hereunder. Inter-Company Pooling is defined as the AIG In-House Casualty Excess of Loss Cover.

    b)    When the cession hereunder exceeds $1,000,000 per occurrence/$1,000,000 Aggregate on a policy, the Reassured shall retain an amount of policy liability equal to the sum of:

            1)    $1,000,000 for absolute net account as described in (a) above, plus

            2)    An exposure to "external" excess of loss Treaty Reinsurance equal to the cession hereunder.

ARTICLE II

EXCLUSIONS:

This Agreement does not apply to but specifically excludes business classified by the Reassured as:

Page 3 of 13

NY02000515
6/21/81

1) Policies Underwritten by:

Division 3A – Financial Services (D&O, Pension Trust, SEC)
Division 3B – Bank Insurance (Lender Protective, Fiduciary E&O)
Division 3C – Special Programs
Division 6A – Professional Liability

2) Policies attaching excess of an aggregate limit of liability for occupational disease claims (1) made, or (2) caused by conditions causing the disease, during a policy period.

3) Policies applying to the aggregate of Worker's Compensation losses occurring during a policy period; and policies attaching excess of aggregate losses which would not normally be subject to a policy aggregate limit (e.g., Auto, OL&T).

4) Policies classified by the Reassured as oil, chemical or mining risks.

5) Policies covering the liability of an Insured for pollution or contamination of the environment not occurring suddenly and accidentally.

6) Ski Area risks and elevated cable cars or lifts.

7) Policies covering any risk insured or reinsured by:

AIG Oil Rig, Inc.
AIG Energy, Inc.

8) Professional Liability of Physicians and Surgeons; except as employees or additional named insureds of hospitals; Lawyers, Accountants, Architects and Engineers, Security Dealers and Brokers, Insurance and Reinsurance Brokers.

9) Pharmaceutical Risks, including bio-medical equipment manufacturers, and manufacturers of birth control or contraceptive devices.

10) Maritime Risks, including off-shore risks and any risk whose operations subject to the Jones Act or the U.S. Longshoremen's and Harbor Worker's Act comprise more than ten percent of the composite premium of the policy at the inception or anniversary date of the policy.

NY02000515
6/21/81

Intere Intermediaries, Inc.



11) Aircraft, missiles and space vehicles and the component parts or accessories specifically manufactured for installation in aircraft, missiles and space vehicles affecting the instrumentation, engines, flying characteristics and safe operation of same, such as tires, fuel compartments, doors and brakes.

12) Reinsurance Assumed.

13) Nuclear Incident Risks as excluded under the Nuclear Incident Exclusion Clause – Liability – Reinsurance, attached hereto

## ARTICLE III

### REINSURER'S LIABILITY:

1. The liability of the Reinsurer shall commence obligatorily and simultaneously with that of the Reassured, the premium on account of such liability to be credited to the Reinsurer from the original date of the Reassured's liability.

### ERRORS AND OMISSIONS:

2. Errors and omissions inadvertently made shall not invalidate the liability of either party, but such error or omission shall be corrected as soon as discovered.

## ARTICLE IV

### TERM AND CANCELLATION:

This Agreement shall be effective 12:01 A.M., December 1, 1980 and shall remain continuously in force but may be terminated by either party at 12:01 A.M., April 1, 1982 and at any April 1st thereafter, subject to ninety (90) days prior written notice of cancellation by registered mail.

It is understood and agreed that policy terms and business ceded hereunder shall not exceed twelve (12) months plus odd time.

As respects business ceded hereunder which is in force at the termination of this Agreement, the Reinsurer shall remain liable for all claims made on such cessions for a further twelve (12) months plus odd time or until the natural expiration date or expiration dates of the discovery period, if any, on all cessions/declarations commencing prior to the effective date of termination. The Reinsurer shall continue to be liable for its proportionate share of the outstanding losses under this Agreement.

NY02000515
6/21/81

Intere Intermediaries, Inc.

In addition to the above, it is understood that the Reassured may provide an extended discovery period not exceeding twelve (12) months in accordance with the "Extensions Clause" of its policies. Notwithstanding anything provided above, any claims made under said "Extensions Clause" shall be deemed to have been made on the day the original policy expired or was cancelled. Premium (if any) for such extended discovery period shall be considered fully earned by the Reinsurer on the last day the original policy was in force.

## ARTICLE V

PREMIUM AND CEDING COMMISSION:

1. The premiums payable to the Reinsurer shall be calculated at the original gross premium charged by the Reassured on the policy ceded, including charges for engineering, claim adjustment, policy issuance and risk management service fees. The Reinsurer shall allow the Reassured a flat commission of 28% on the net premiums ceded, that is, premiums written less cancellations and return premiums. The commission allowance shall cover premium taxes of all kinds, local board assessments, and all other expenses and charges whatsoever based upon premiums (except losses and loss adjustment expenses), falling on the business ceded hereunder.

TAXES:

2. It is understood and agreed that in consideration of the terms under which this Agreement is issued, the Reassured undertakes not to claim any deduction in respect of the premium hereon when making tax returns, other than income or profits tax returns, to any State or Territory.

## ARTICLE VI

ACCOUNTS AND REMITTANCES:

The Reassured shall furnish to the Reinsurer the following information in the manner set forth hereunder:

A) Within thirty (30) days after the end of each quarter, the Reassured shall provide a report showing the Reinsurer's proportion of net written premiums by line, commission allowances, and net loss paid (i.e., losses and loss adjustment expenses paid, less salvages and subrogation recoveries) and outstanding. Any balance due to the Reinsurer shall be paid with the account. Any balance (excluding outstanding losses) due to the Reassured shall be paid within twenty (20) days after receipt of the account in the office of the Reinsurer.

NY02000515
6/21/81

Intere Intermediaries, Inc.

B)  Within thirty (30) days after the end of each quarter, the
Reassured shall provide a report by underwriting year of
account, showing the Reinsurer's proportion of the outstanding
loss and loss adjustment expense reserves by line and by year
of loss occurrence, as of the end of the quarter.  Losses on
a "Claim-Made" basis shall be segregated by policy year of
first report of loss by the Insured, rather than by year of
occurrence.

C)  Within thirty (30) days after the end of each quarter, the
Reassured shall provide a report by underwriting year of
account, showing the Reinsurer's in-force and unearned
premium by line computed on the monthly pro rata basis as
of the end of the quarter.

D)  The Reassured shall provide a Bordereau of risks ceded
on forms supplied by the Reassured.

## ARTICLE VII

## LOSS NOTICE AND SETTLEMENT:

The Reassured shall promptly report to the Reinsurer all claims which in the
opinion of the Reassured may involve the Reinsurer hereunder.  The Reassured
shall also advise the Reinsurer of subsequent developments likely to affect
materially the interests of the Reinsurer in such claim.  Inadvertent
omission or oversight by the Reassured in advising the Reinsurer of such
claim and subsequent developments shall not in any way affect the liability
of the Reinsurer hereunder; but such delayed advices shall be promptly
dispatched to the Reinsurer as soon as the omission or oversight shall have
been discovered by the Reassured.

All losses and compromises of losses, and expenses and allowances in
consequence of loss shall be settled by the Reassured without the inter-
ference of the Reinsurer and the Reinsurer shall accept the settlement of
the Reassured as the sole warrant for the payment of applicable losses
hereunder.  The Reassured may likewise at its sole discretion, commence,
continue, defend, compromise, settle, or withdraw from actions, suits or
prosecutions and generally do all such matters and things relating to any
claim or loss as in its judgement may be beneficial or expedient.  It is
understood, however, that when so requested the Reassured will afford the
Reinsurer an opportunity to be associated with the Reassured, at the expense
of the Reinsurer, in the defense of any claim or suit or proceeding involving
this reinsurance, and the Reassured and the Reinsurer shall cooperate in
every respect in the defense or control of such claim or suit or proceeding.

NY02000515
6/21/81

Intere Intermediaries, Inc.

The Reinsurer shall pay its proportionate share of any loss hereunder to the Reassured promptly upon receipt of proof of loss from the Reassured. The Reassured may, however, give the Reinsurer 15 days written notice of its intention to pay any loss upon a certain date and may require the Reinsurer to have its share of such loss in the hands of the Reassured by such date, provided, however, such written notice allows the Reinsurer at least 48 hours after receipt to prepare and dispatch its payment.

NOTE:   Claim Reporting to the Reinsurer shall have the same conditions as Reassured's Claim Reporting Endorsement for self-insurers (as respects both Worker's Compensation and General Liability).

## LOSS EXPENSES:

1)  As respects Commercial Umbrella, the Reassured's policy does not cover defense costs on claims covered by underlying policies scheduled on the Umbrella. Hence this Treaty covers its pro rata share of defense costs only as respects occurrences not covered by any underlying insurance (e.g., after any underlying aggregate limit is exhausted; or an uninsured occurrence such as advertising liability; or non-owned watercraft, etc.)

2)  As respects all other losses hereunder the Reinsurer shall pay its pro rata share of defense costs and of allocated claim expenses disbursed to investigate, appraise and settle losses. The Reinsurer shall not be charged for salaries of officials and employees of the Reassured, supervisory fees or other general compensation paid to managers or agents or claim adjusting firms, or any other overhead expense of the Reassured. However, the Reinsurer shall pay its share of legal fees for services to appraise and investigate specific claims hereunder, performed by a law firm owned in whole or in part by the Reassured but otherwise independent from the Reassured's operations.

## ARTICLE VIII

(Applies only to those Reinsurers who do not qualify for credit by any state or any other governmental authority having jurisdiction over the Company's loss reserves.)

## RESERVES:

As regards policies issued by the Reassured coming within the scope of this Agreement, the Reassured agrees that when it shall file with the Insurance Department or set up on its books reserves for unearned premium and unpaid losses covered hereunder which it shall be required to set up by law it will forward to the Reinsurer a statement showing the proportion of such reserves which is applicable to it. The Reinsurer hereby agrees to fund such reserves by either cash advances or a letter of credit. The Reinsurer shall have the option of determing the method of funding provided it is acceptable to the Insurance Regulatory authorities involved.

In the event of funding by cash advances, the Reinsurer will deposit such funds in an escrowed bank account in the name of the Reassured and the Reinsurer shall be credited with interest at the prevailing rate for time deposit accounts.

In the event of funding by a letter of credit, the Reinsurer will apply for and secure delivery to the Reassured of a clean irrevocable letter of credit issued by any bank acceptable to the Reassured and the governmental authorities having jurisdiction over the Reassured's reserves.

The Reassured undertakes to use and apply any amounts which it may draw upon such escrowed bank account or such credit pursuant to the terms of the trust agreement under which the letter of credit is held for the following purposes only:

> (a) To pay the Reinsurer's share or to reimburse the Reassured for the Reinsurer's share of any liability for unearned premium and losses reinsured by this Agreement.

> (b) To make refund of any sum which is in excess of the actual amount required to pay the Reinsurer's share of unearned premium and losses reinsured by this Agreement.

The designated bank shall have no responsibility whatsoever in connection with the propriety of withdrawals made by the Reassured or the disposition of funds withdrawn, except to see that withdrawals are made only upon the order of properly authorized representatatives of the Reassured.

## ARTICLE IX

### Follow the Fortunes:

All reinsurances for which the Reinsurer shall be liable by virtue of this Agreement shall be subject in all respects to the same rates, terms, conditions, interpretations, waivers, the exact proportion of premiums paid to the Reassured and to the same modifications, alterations and cancellations as the respective insurances of the Reassured to which such reinsurances relate, the true intent of this Agreement being that the Reinsurer shall, in every case to which this Agreement applies, and in the proportion specified herein, follow the fortunes of the Reassured.

NY02000515
6/21/81

Intere Intermediaries, Inc.

## ARTICLE X

### ACCESS TO RECORDS:

The Reinsurer or its duly authorized representatives shall at all reasonable times during the continuance of this Agreement, or for so long thereafter as the Reassured is required by state law to retain its records, have free access to the books and records of the Reassured for the purpose of verifying the amount of premium under this Agreement, or any loss transactions hereunder.

## ARTICLE XI

### CURRENCY:

All payments made under this Agreement shall be in currency of the United States of America.

## ARTICLE XII

### INSOLVENCY:

This reinsurance shall be payable by the Reinsurer on the basis of the liability of the Reassured under contract or contracts reinsured without diminution because of the insolvency of the Reassured.

It is further agreed and understood that in the event of insolvency of the Reassured, the liquidator or receiver or statutory successor of the Reassured shall give written notice to the Reinsurer of the pendency of a claim against the insolvent Reassured on the policy or policies reinsured within a reasonable time after such claim is filed in the insolvency proceeding; that during the pendency of such claim the Reinsurer may investigate such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated any defense or defenses which it may deem available to the Reassured or its liquidator or receiver or statutory successor; that the expense thus incurred by the Reinsurer shall be chargeable subject to court approval against the insolvent Reassured as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Reassured solely as a result of the defense undertaken by the Reinsurer.

Where two or more Reinsurers are involved in the same claim and a majority of interest elect to interpose defense to such claim, the expense shall be apportioned in accordance with the terms of the reinsurance Agreement as though such expense had been incurred by the Reassured.

Intere Intermediaries, Inc.

NY02000515
6/21/81

It is further agreed and understood that in the event of the insolvency of the Reassured, the reinsurance shall be payable by the Reinsurer directly to the Reassured, or to its liquidator, receiver or statutory successor, except as provided by Section 315 of the New York Insurance Law or except (a) where the Agreement specifically provides another payee of such reinsurance in the event of the insolvency of the Reassured and (b) where the Reinsurer with the consent of the direct insured or insureds has assumed such policy obligations of the Reassured as direct obligations of the Reinsurer to the payees under such policies and in substitution for the obligations of the Reassured to such payees.

## ARTICLE XIII

### ARBITRATION:

In the event of differences arising between the contracting parties with reference to the interpretation of this Agreement or their rights with respect to any transaction involved, whether arising before or after termination of this Agreement, such differences shall be submitted to arbitration upon the written request of one of the contracting parties. Each party shall appoint an arbitrator within thirty days of being requested to do so, and the two named shall select a third arbitrator before entering upon the arbitration. If either party refuses or neglects to appoint an arbitrator within the time specified, the other party may appoint the second arbitrator. If the two arbitrators fail to agree on a third arbitrator within thirty days of their appointment, each of them shall name three individuals, of whom the other shall decline two, and the choice shall be made by drawing lots. All arbitrators shall be active or retired disinterested officers of insurance or reinsurance companies or Underwriters at Lloyd's, London.

Each party shall submit its case to the arbitrators within thirty days of the appointment of the third arbitrator or within such period as may be agreed by the arbitrators. All arbitrators shall interpret this Agreement as an honorable engagement rather than as merely a legal obligation; they are relieved of all judicial formalities and may abstain from following the strict rules of law. Their decision shall be made as soon as practicable but within sixty days following termination of the hearings unless the parties consent to an extension.

The decision in writing of any two arbitrators, when filed with the contracting parties, shall be final and binding on both parties. Judgement upon the award rendered may be entered in any Court having jurisdiction thereof. Each party shall bear the expense of its own arbitrator and shall jointly and equally bear with the other party the expense of the third arbitrator and of the arbitration. Any arbitration shall take place in the city in which the Reassured's Head Office is located or such other place as may be mutually agreed.

## ARTICLE XIV

(Applies only to those Reinsurers who are domiciled outside the United States of America and are liable for Federal Excise Tax.)

### FEDERAL EXCISE TAX:

Notice is hereby given that the Reinsurers have agreed to allow for the purpose of paying the Federal Excise Tax 1% of the premium payable hereon to the extent such premium is subject to Federal Excise Tax.

It is understood and agreed that in the event of any return of premium becoming due hereunder, the Reinsurers will deduct 1% from the amount of the return and the Reassured or its agent should take steps to recover the tax from the United States Government.

## ARTICLE XV

(Applies only to those Reinsurers who are domiciled outside the United States of America.)

### SERVICE OF SUIT:

In the event of the failure of the Reinsurers hereon to pay any amount claimed to be due hereunder, the Reinsurers hereon, at the request of the Reassured, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court.

Service of process in such suit may be made upon Messrs. Mendes and Mount, 3 Park Avenue, New York, N.Y. 10016, and in any suit instituted against any one of them under this Agreement the Reinsurers will abide by the final decision of such court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of the Reinsurers in any such suit and/or upon the request of the Reassured to give a written undertaking to the Reassured that they will enter a general appearance upon the Reinsurers' behalf in the event such a suit shall be instituted. Further pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Reinsurers hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Reassured or any beneficiary hereunder arising out of this Agreement, and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

NYO2000515
6/21/81

INSOLVENCY FUNDS EXCLUSION CLAUSE:

This Agreement excludes all liability of the Reassured arising, by contract, operation of law, or otherwise, from its participation or membership, whether voluntary or involuntary, in any insolvency fund. "Insolvency fund" includes any guaranty fund, insolvency fund, plan, pool, association, fund or other arrangement, howsoever denominated, established or governed; which provides for any assessment of or payment or assumption by the Reassured of part or all of any claim, debt, charge, fee, or other obligation of an insurer, or its successors or assigns, which has been declared by any competent authority to be insolvent, or which is otherwise deemed unable to meet any claim, debt, charge, fee or other obligation in whole or in part.

NYO2000515
6/21/81

Intere Intermediaries, Inc.




## NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE

(1) This reinsurance does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original policies of the Reassured (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

Limited Exclusion Provision.*

I. It is agreed that the policy does not apply under any liability coverage, to {injury, sickness, disease, death or destruction} with respect to which an insured under bodily injury or property damage the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

II. Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobiles, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

III. The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either
  (a) become effective on or after 1st May, 1960, or
  (b) become effective before that date and contain the Limited Exclusion Provision set out above;
provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Reassured on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3) Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that, for all purposes of this reinsurance the original liability policies of the Reassured (new, renewal and replacement) affording the following coverages:
  Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)
shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

Broad Exclusion Provision.*

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to {injury, sickness, disease, death or destruction.} bodily injury or property damage.
  (a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
  (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to {immediate medical or surgical relief,} to expenses incurred with respect first aid, to {bodily injury, sickness, disease or death} resulting from the hazardous properties of bodily injury nuclear material and arising out of the operation of a nuclear facility by any person or organization.

Intere Intermediaries, Inc.

III. Under any Liability Coverage, to *injury, sickness, disease, death or destruction* resulting from the hazardous properties of nuclear material, if bodily injury or property damage

    (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

    (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

    (c) the *injury, sickness, disease, death or destruction* arises out of the furnishing bodily injury or property damage by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to *injury to or destruction of property at such nuclear facility.* property damage to such nuclear facility and any property thereat.

IV. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; * ~~waste means any waste material (1) containing byproduct material and (2)~~ * resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

    (a) any nuclear reactor,

    (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste;

    (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

    (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

*With respect to injury to or destruction of property, the word "injury" or "destruction"* "property damage" includes all forms of radioactive contamination of property. *includes all forms of radioactive contamination of property.*

V. The inception dates and thereafter of all original policies affording coverages specified in this paragraph (3), whether new, renewal or replacement, being policies which become effective on or after 1st May, 1960, provided this paragraph (3) shall not be applicable to

    (i) Garage and Automobile Policies issued by the Reassured on New York risks, or

    (ii) statutory liability insurance required under Chapter 90, General Laws of Massachusetts,

until 90 days following approval of the Broad Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(4) Without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that paragraphs (2) and (3) above are not applicable to original liability policies of the Reassured in Canada and that with respect to such policies this Clause shall be deemed to include the Nuclear Energy Liability Exclusion Provisions adopted by the Canadian Underwriters' Association for the Independent Insurance Conference of Canada.

*NOTE: The words printed in italics in the Limited Exclusion Provision and in the Broad Exclusion Provision shall apply only in relation to original liability policies which include a Limited Exclusion Provision or a Broad Exclusion Provision containing those words.

Rev. 9/67

* "Waste" means any waste material (1) containing by-product material other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content and (2)

Rev. 6/79

                               Intere Intermediaries, Inc.

INTERESTS AND LIABILITIES CONTRACT

to

Excess Casualty Variable Quota Share Reinsurance Treaty

between

AMERICAN HOME ASSURANCE COMPANY
New York, New York

or

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.
New York, New York

(hereinafter referred to separately, not jointly, as the "REASSURED")

and

SKANDIA AMERICA REINSURANCE CORPORATION
New York, New York

(hereinafter referred to as the "SUBSCRIBING REINSURER")

It is hereby agreed by and between the REASSURED of the one part, and the SUBSCRIBING REINSURER of the other part, that the SUBSCRIBING REINSURER subscribes a Two Five Decimal Zero Zero Percent (25.00%) share of the Interests and Liabilities of the "Reinsurer" as set forth in the EXCESS CASUALTY VARIABLE QUOTA SHARE REINSURANCE TREATY effective 12:01 A.M., December 1, 1980.

The share of the SUBSCRIBING REINSURER in the Interests and Liabilities of the "Reinsurer" in respect of said Agreement shall be separate and apart from the shares of the other reinsurers subscribing to said Agreement, and the Interests and Liabilities of the SUBSCRIBING REINSURER shall not be joint with those of the other reinsurers, and the SUBSCRIBING REINSURER in no event shall participate in the Interests and Liabilities of the other reinsurers subscribing hereon.

Page 1 of 2
Intere Intermediaries, Inc.

NY02000513
4/13/81

Intere Intermediaries, Inc., is hereby recognized as the Intermediary negotiating this Agreement for all business hereunder. All communications (including but not limited to notices, statements, premiums, return premiums, commissions, taxes, losses, loss adjustment expenses, salvages and loss settlements) relating thereto shall be transmitted to the REASSURED or the SUBSCRIBING REINSURER through Intere Intermediaries, Inc., 127 John Street, New York, N.Y. 10038. Payments by the REASSURED to the Intermediary shall be deemed to constitute payment to the SUBSCRIBING REINSURER. Payments by the SUBSCRIBING REINSURER to the Intermediary shall be deemed only to constitute payment to the REASSURED to the extent that such payments are actually received by the REASSURED.

IN WITNESS WHEREOF, the parties hereto have caused this Interests and Liabilities Contract to be executed in duplicate by their duly authorized officers:

At New York, New York, this 11th day of May, 1981.

AMERICAN HOME ASSURANCE COMPANY

or

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

And at New York, New York this 22 day of SEPTEMBER, 1981.

SKANDIA AMERICA REINSURANCE CORPORATION

Robert F Orlich

ASSISTANT SECRETARY

Page 2 of 2

Intere Intermediaries, Inc.

NY02000515
4/13/81




ENDORSEMENT NO. 1

to

INTERESTS AND LIABILITIES CONTRACT

in respect of

Excess Casualty Variable Quota Share Reinsurer Agreement
Originally effective 12:01 a.m., Eastern Standard Time
December 1, 1980.

between

AMERICAN HOME ASSURANCE COMPANY
New York, New York

or

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.
New York, New York

(hereinafter referred to separately,
not jointly, as the "Reassured")



and

SKANDIA AMERICA REINSURANCE CORPORATION
Wilmington, Delaware

(hereinafter referred to as the "Reinsurer")

    It is hereby agreed by and between the Reassured of the
one part, and the Reinsurer of the other part, that effective
12:01 a.m., Eastern Standard Time, April 1, 1982 Addendum
No. 1 is made part of the Excess Casualty Variable Quota Share
Reinsurance Agreement.

    All other terms and conditions remain unchanged.

-1-
Intere Intermediaries, Inc.

NYO2000515
4/29/82

IN WITNESS WHEREOF, the parties hereto have caused this Endorsement to be executed in duplicate by their duly authorized officers:

In New York, New York this *8th* day of *DECEMBER* 1982.

AMERICAN HOME ASSURANCE COMPANY

*James A. Fowler*

and in New York, New York this *8th* day of *DECEMBER* 1982.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

*James A. Fowler*

and in New York, New York this *22* day of *JULY* 1982.

SKANDIA AMERICA REINSURANCE CORPORATION

*Robert F Onlich*
*ASSISTANT VICE PRESIDENT*

NY02000515
4/29/82

Intere Intermediaries, Inc.

 

ADDENDUM No. 1

to

Excess Casualty Variable Quota Share Reinsurance Agreement
Originally effective 12:01 a.m., Eastern Standard Time
December 1, 1980

between

AMERICAN HOME ASSURANCE COMPANY
New York, New York

or

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.
New York, New York

(hereinafter referred to separately,
not jointly, as the "Reassured")

and

The Companies subscribing the respective
Interests and Liabilities Contract to which
this Agreement is attached

(hereinafter referred to as the "Reinsurer")

It is hereby mutually agreed by and between the
Reassured and the Reinsurer that the following changes
shall be effective as of 12:01 a.m., April 1, 1982, as
respects new and renewal business only.

REVISED
NY02000515
7/12/82

-1-

Intere Intermediaries, Inc.



ARTICLE V is amended to read as follows:

## ARTICLE V

### PREMIUM AND CEDING COMMISSION:

1. The premiums payable to the Reinsurer shall be calculated at the original gross premium charged by the Reassured on the policy ceded, including charges for engineering, claim adjustment, policy issuance and risk management service fees. The Reinsurer shall allow the Reassured a flat commission of 30% on the net premiums ceded, that is, premiums written less cancellations and return premiums. The commission allowance shall cover premium taxes of all kinds, local board assessments, and all other expenses and charges whatsoever based upon premiums (except losses and loss adjustment expenses), falling on the business ceded hereunder.

### TAXES:

2. It is understood and agreed that in consideration of the terms under which this Agreement is issued, the Reassured undertakes not to claim any deduction in respect of the premium hereon when making tax returns, other than income or profits tax returns, to any State or Territory.

ARTICLE VI is amended to read as follows:

## ARTICLE VI

### ACCOUNTS AND REMITTANCES:

The Reassured shall furnish to the Reinsurer the following information in the manner set forth hereunder:

> A) Within sixty (60) days after the end of each quarter, the Reassured shall provide a report showing the Reinsurer's proportion of net written premiums by line, commission allowances, and net loss paid (i.e., losses and loss adjustment expenses paid, less salvages and subrogation recoveries) and outstanding. Any balance due to the Reinsurer shall be paid with the account. Any balance (excluding outstanding losses) due to the Reassured shall be paid within twenty (20) days after receipt of the account in the office of the Reinsurer.

NYO2000515
4/26/82

Intere Intermediaries, Inc.



B) Within sixty (60) days after the
end of each quarter, the Reassured
shall provide a report by underwriting
year of account, showing the
Reinsurer's proportion of the out-
standing loss and loss adjustment
expense reserves by line and by year
of loss occurrence, as of the end of
the quarter. Losses on a "Claim-Made"
basis shall be segregated by policy
year of first report of loss by the
Insured, rather than by year of
occurrence.

C) Within sixty (60) days after the
end of each quarter, the Reassured
shall provide a report by underwriting
year of account, showing the
Reinsurer's in-force and unearned
premium by line computed on the
monthly pro rata basis as of the end
of the quarter.

D) The Reassured shall provide a
Bordereau of risks ceded on forms
supplied by the Reassured.

3. The Nuclear Incident Exclusion Clause - Liability is
hereby deleted and replaced in its entirety by the form
attached hereto.


All other terms and conditions remain unchanged.

NY02000515
4/26/82

## CANCELLATION ENDORSEMENT

Effective 12:01 a.m., Eastern Standard Time, April 1, 1983

.to

## INTERESTS AND LIABILITIES CONTRACT

in respect of

## Excess Casualty Variable Quota Share Reinsurance Agreement

between

## AMERICAN HOME ASSURANCE COMPANY
### New York, New York

or

## NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

(hereinafter referred to separately,
not jointly, as the "Reassured")

and

## SKANDIA AMERICA REINSURANCE CORPORATION
### Wilmington, Delaware

(hereinafter referred to as the "Reinsurer")

It is hereby agreed by and between the Reassured of the one part, and the Reinsurer, of the other part, that pursuant to Article IV of the Excess Casualty Variable Quota Share Reinsurance Agreement, the Reinsurer's 25.000% participation is terminated effective 12:01 a.m., April 1, 1983.

NY02000515

RECEIVED

MAY 27 1983

SKANDIA GROUP

Intere Intermediaries Inc.

IN WITNESS WHEREOF, the parties hereto have caused this Endorsement to be executed in duplicate by their duly authorized officers:

In New York, New York this      day of      1983

AMERICAN HOME ASSURANCE COMPANY

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

_James A. Ford_

and in New York, New York this 27th day of May 1983.

SKANDIA AMERICA REINSURANCE CORPORATION

_J. Eugene Duffee, Senior Vice President_

NY02000515
4/26/83

-2-

RECEIVED

MAY 27 1983

SKANDIA GROUP

Intere Intermediaries Inc.